**PATERAS et al. v. WALSH STEVEDOR-ING CO., Inc.**

No. 2340.

District Court, S. D. Alabama, S. D.

Jan. 14, 1944.

J. G. Hamilton, of Mobile, Ala., for libelants.

John N. Allen and William G. Caffey, both of Mobile, Ala., for respondents.

McDUFFIE, District Judge.

### Findings of Fact

1. The individual libelants named in this cause constituted a partnership doing business under the name and style of Anastassios Pateros and Sons, and they resided at Chios, Greece. The partnership was the owner of the Greek steamship "Marouko Pateras" at the times referred to in the libel, and the Walsh Stevedoring Company, Inc., is a corporation organized and existing under the laws of the State of Alabama, with its principal place of business in the City and County of Mobile, State of Alabama.

2. The aforesaid owners of said vessel on the 9th day of August, 1940, chartered said vessel to Mitsubishi Sheji Kaisha, Ltd., for a voyage from one of two United States Gulf ports to a port or ports in Japan to load and carry a cargo of 6,800 tons of 2,240 pounds each (5% more or less at vessel's option) of heavy handy scrap steel and/or rails, no pieces over 33 feet lengths or 3 tons weight for an agreed rate of charter hire of $13.75 per ton of 2,240 pounds.

3. The charter party further provided that cargo should be loaded and stowed by charterer's stevedores free of expense to the steamer; that in case of detention beyond the time provided in the charter, the charterer should pay demurrage at the rate of $300 United States currency per day or pro rata for part of a day, payable day by day at ports of loading or discharging; that at loading or discharging ports the ship was to furnish steam or power to drive ship's winches, also to give charterers and/or consignees the full use of vessel's winches, derricks, gins, blocks and falls. It was further provided that at loading ports the steamer should employ charterer's agent paying agency fee.

4. The vessel came to Mobile, Alabama, one of its loading ports under the charter, and the charterer's agent employed respondent, Walsh Stevedoring, to load that portion of the scrap cargo on the 28th day of August, 1940, using this ship's winches, tackle and equipment. The respondent proceeded with the loading of scrap until about 5:30 P.M. on said date, when the after starboard stay or shroud supporting the forward mast parted, with the result that the mast bent or buckled and was damaged.

5. The Marouko Pateras is a steel vessel built in 1917, and in appearance old and rusty, and its loading equipment was not in good condition. The winch being used for loading, at the time of the accident, was rated to lift 5 tons when new and in good condition, however on August 28, 1940, it was in such condition that it would lift only about 1½ tons, and an attempt to lift a weight in excess of its capacity would stall it. The winch, on the occasion when the shroud or stay broke, did not stall, the strain being exerted at the time the stay or shroud broke, did not exceed the capacity of the winch. The stays or shrouds supporting the mast that was broken or bent, were all so impaired from rust and age, it was found necessary to replace five stays in addition to the broken one, to that mast. It is possible that even lesser strain on the stay would have broken it.

6. The boom was rigged with a single fall or whip which was about ¾ to ⅞ of an inch in diameter. The shroud or stay that broke was about 1½ to 1¾th inches in diameter. If both the fall and the stay or shroud were in good physical condition, the shroud or stay would stand about six times as much strain as the fall. The fall on this vessel did not break, but the stay or shroud parted at a point just above the servage where salt spray comes down the stay or shroud and accumulates. The shroud or stay that broke was so badly rusted and worn at said point that it was not in a reasonably safe, satisfactory or fit condition for use in loading a cargo of scrap iron in the usual and customary manner.

7. On the claim of libelants that respondent applied excessive strain on the ship's equipment, that is on its stays or shrouds and thereby caused the damage to the mast after being warned not to do so, the Court finds that the Walsh Stevedoring Company, its stevedores, agents or servants, though not warned of danger to the mast, with the exercise of reasonable and proper care, should have seen that the repeated pulling on a portion of the scrap being lifted, was endangering the mast of the vessel. Without ascertaining such danger, the respondent continued the application of strain, and the repeated efforts to lift the scrap broke the stay and damaged the mast.

8. The Court further finds that after the mast broke, the loading of scrap iron was continued by the respondent with other equipment, and finished on Saturday, August 31st; that the vessel then had to take on a supply of coal and was not ready to sail until Sunday, September 1st. She was detained for repairs of the damage done when the stay or shroud broke, through Friday, September 6th, and was ready to sail on Saturday, September 7th. Her delay for repairs of the broken or bent mast and shroud, in the port of Mobile, was six days.

9. The expenses of the vessel due to her delay for repairs, were as follows:

| | |
|---|---|
| 6 days at $300.00 per day | $1,800.00 |
| Crew's wages, 6 days, at $120.00 per day | 720.00 |
| Food for crew, $30.00 per day | 180.00 |
| Extra expense for wharfage at ½¢ per ton | 21.35 |
| Extra expense for coal during detention, at $12.25 per day | 73.50 |
| Cost of repairs | 2,370.00 |
| Total | $5,164.85 |

The total cost of repairs, including the replacing of the broken stay and the installation of five new stays was $2,850. The cost of installing the six new stays was $480, and deducting this amount from the total repair bill of $2,850, leaves $2,370, which I find to be the cost of repairs necessary, resulting from the accident. I further find that the total damage caused by the combined fault of libelants and respondent is $5,164.85. In a division of the said damages, libelants would bear the sum of $2,582.47, and the respondent would be held liable to pay the libelants the sum of $2,582.48, with interest at 6% from this date.

Conclusions of Law

1. Under the evidence in this cause, both parties thereto were negligent, and it is a case in which the rule of divided damages should apply. The libelants were negligent in furnishing equipment for loading that was not reasonably safe or strong enough for such a purpose. The respond-

ent was negligent in repeatedly pulling or applying a strain on the ship's equipment, the danger in such use of which, it should have ascertained.

2. It is the conclusion of the Court that $300 per day, provided in the charter for each day of delay, is a fair, reasonable and just measure of damages for each day of delay as proven: likewise the other items set forth above in paragraph 9 of the Findings of Fact, covering the expenses of the vessel due to her delay for repairs, constitute fair and reasonable damages in this cause.